DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Yolanda Cruz, appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that granted the motion of Appellee Charles Thomas to enforce the parties' shared parenting agreement. This Court affirms.
 {¶ 2} Cruz is the mother of D.T., born March 19, 1999. Thomas, who apparently believed he was the child's biological father, was present at the hospital when D.T. was born and acknowledged that he was the father on the child's birth certificate. Cruz and Thomas formalized the paternity acknowledgement and, on July 13, 1999, the Lorain County Child Support Enforcement Agency ("CSEA") issued an administrative order that Thomas pay child support and provide health insurance for the child. The order indicated that the basis of the support duty was an acknowledgement of paternity filed with the central paternity registry.
 {¶ 3} On December 26, 2001, Thomas filed a complaint, seeking custody of D.T. Thomas also moved for emergency temporary custody of D.T., alleging that the child had been removed from Cruz's home due to allegations of dependency and neglect. The trial court granted Thomas emergency temporary custody and, on May 14, 2002, the parties appeared before a magistrate and entered into an agreed temporary arrangement that Thomas would continue to have custody of D.T. and Cruz would have scheduled visitation. At that time, the trial court ordered that the parties appear at the CSEA for paternity testing. It appears that the trial court may have been unaware at that time that the parties had formalized the acknowledgement of paternity.
 {¶ 4} On September 19, 2002, the parties met at the office of Thomas's attorney and entered into a shared parenting agreement. Both parties presented the agreement to the court for approval on September 30 but, because no paternity testing had been done, the court ordered that Thomas's paternity first be confirmed through genetic testing. After genetic testing revealed that Thomas was not the biological father of D.T., Cruz moved the trial court to withdraw the shared parenting agreement and for sole custody of D.T. On the same day, Thomas moved to enforce the shared parenting agreement. Following a hearing, the trial court granted Thomas's motion to enforce the agreement. Cruz appeals and raises one assignment of error.
 Assignment of error
"The Court erred when it adopted the shared parenting order granting parental rights and responsibilities to a non-parent against the wishes of a parent because said decision was unconstitutionally contrary to the ruling of the U.S. Supreme Court in Troxel v. Granville, contrary to law, constituted an abuse of discretion by the Trial Court, and is not supported by, and is against the manifest weight of the evidence."
 {¶ 5} Cruz contends that the trial court erred in enforcing the shared parenting agreement. She initially asserts that the question before this Court is "whether the evidence supports the trial court's finding that Appellant relinquished her right to custody of the child because she was an unsuitable parent, or whether she is unable to provide care and support, or that such an award was detrimental to the child." Because the trial court made no such finding, this Court will not address this question.
 {¶ 6} Much of Cruz's argument suggests that the issue before the trial court was competing motions for custody filed by a parent and a non-parent. Although Thomas did initially file a complaint for legal custody, the parties later entered into a shared parenting agreement. The issue before the trial court was whether the shared parenting agreement would be enforced.
 {¶ 7} Cruz makes two arguments as to why the shared parenting agreement should not be enforced. First, she makes a one-sentence argument, with no reference to evidence in the record, that she did not voluntarily agree to the shared parenting agreement because she believed that it was contingent on genetic testing to confirm that Thomas was the biological father of D.T. There was ample evidence before the trial court, however, to support its conclusion that Cruz did voluntarily agree to the shared parenting arrangement. Cruz was repeatedly questioned about this at the hearing. The evidence adduced at the hearing demonstrated that Cruz entered into the agreement with her attorney present, the terms of the agreement were reviewed line by line with both parties, the agreement made no mention of genetic testing, and Cruz was aware at the time she signed the agreement that there were other men who could potentially be the natural father of D.T. and that Thomas's paternity had never been confirmed through genetic testing. Thus, her brief argument on the weight of the evidence is not persuasive.
 {¶ 8} Cruz next contends that the trial court had no authority to enforce the shared parenting agreement between these parties because Thomas is not the parent of D.T. R.C. 3109.04(A)(2) provides that a court may allocate parental rights and responsibilities to both "parents" if it finds that shared parenting is in the best interest of the child. This Court has held that "[a] court cannot give a non-parent parental status under R.C. 3109.04." Konicek v. Konicek (2001), 144 Ohio App.3d 105,107, citing Lorence v. Goeller (July 19, 2000), 9th Dist. No. 98CA007193. The term "parent," however, is not defined in R.C. 3109.04.
 {¶ 9} In In re Bonfield (2002), 97 Ohio St.3d 387, 392, the Ohio Supreme Court used the definition of "parent and child relationship" set forth in R.C. 3111.01 to define "parent" for purposes of R.C. 3109.04. R.C. 3111.01 defines "parent and child relationship" as:
"the legal relationship that exists between a child and the child's natural or adoptive parents and upon which those sections and any other provision of the Revised Code confer or impose rights, privileges, duties, and obligations. The `parent and child relationship' includes the mother and child relationship and the father and child relationship."
 {¶ 10} Thus, the parent and child relationship can be established in one of three ways: (1) by natural parenthood, (2) by adoption, or (3) by other legal means in the Revised Code that confer or impose parental rights, privileges, duties, or obligations. The evidence before the trial court established that a parent and child relationship existed between Thomas and D.T., pursuant to either former R.C. 5101.314 or former R.C.3111.211, due to the formal acknowledgement of paternity made by Cruz and Thomas and the administrative order that Thomas pay child support.
 {¶ 11} At the time Cruz and Thomas formalized the acknowledgement of paternity in 1999, former R.C. 5101.314 provided, in relevant part:
"(A)(1) The natural father, natural mother, * * * in person or by mail, may file an acknowledgment of paternity with the division of child support in the department of human services, acknowledging that the child is the child of the natural father who signed the acknowledgment.
* * *
"(3) An acknowledgment of paternity is final and enforceable without ratification by a court when either of the following has occurred:
"(a) The acknowledgment has become final pursuant to section 2151.232
[2151.23.2] or 3111.211 [3111.21.1] of the Revised Code.
"(b) The acknowledgment has been filed pursuant to division (A)(1) of this section, the information on the acknowledgment has been entered in the birth registry pursuant to division (D) of this section, the acknowledgment has not been rescinded pursuant to division (B) of this section, and more than sixty days have elapsed since the date of the last signature on the acknowledgment.
"Thereafter, the child is the child of the man who signed the acknowledgment of paternity, as though born to him in lawful wedlock[.] * * *."
 {¶ 12} Former R.C. 3111.211 provided, in relevant part:
"(A) If an acknowledgment has been filed and entered into the birth registry pursuant to section 5101.314 [5101.31.4] of the Revised Code but has not yet become final, either of the persons who signed the acknowledgment may request that an administrative officer of a child support enforcement agency issue an administrative order pursuant to division (B) of this section for payment of child support and providing for the health care needs of the child.
* * *
"If the parties do not raise the issue of the existence or nonexistence of a parent and child relationship pursuant to the request made under this section and an administrative order is issued pursuant to division (B) of this section prior to the date the acknowledgment filed and entered on the birth registry under section 5101.314 [5101.31.4] of the Revised Code becomes final, the acknowledgment shall be considered final as of the date of the issuance of the order. An administrative order issued pursuant to division (B) of this section shall not affect an acknowledgment that becomes final pursuant to section 5101.314 [5101.31.4] of the Revised Code prior to the issuance of the order."
 {¶ 13} The trial court had evidence before it that Thomas was listed as the father on D.T.'s birth certificate and that Thomas and Cruz went to CSEA and signed an acknowledgement of paternity. Through an administrative order dated July 13, 1999, Thomas was ordered to pay child support and to provide health insurance coverage for D.T. The administrative order further indicated that the basis of the support duty was an acknowledgement of paternity filed with the central paternity registry. There was no evidence before the court that either party had ever attempted to rescind the acknowledgement. The trial court had ample evidence before it from which it could conclude that the acknowledgement of Thomas's paternity of D.T. had become final pursuant to either former R.C. 5101.314 or former R.C. 3111.211. Consequently, the evidence supported the trial court's conclusion that the acknowledgement of paternity in this situation conclusively established Thomas as the father of D.T.
 {¶ 14} The trial court properly rejected Cruz's position that any acknowledgement could be rebutted by the results of genetic testing. R.C. 3111.03 dictates when and how presumptions of paternity arise and the means by which they can be rebutted. The formal acknowledgement of paternity finalized by Cruz and Thomas in this situation rose to something even higher than a presumption. R.C. 3111.03(C)(2) provides that "[a] presumption of paternity that arose prior to [March 22, 2001] based on an acknowledgment of paternity that became final under former section 3111.211
* * * or 5101.314 * * * is not a presumption and shall be considered a final and enforceable determination of paternity unless the acknowledgment is rescinded under section 3111.28 or 3119.962 [3119.96.2] of the Revised Code." As the determination of paternity in this case had not been rescinded, it was a final and conclusive determination that Thomas is the father of D.T.
 {¶ 15} Consequently, the trial court did have the authority to enforce the shared parenting agreement in this case, as it was entered into by the parents of D.T. The assignment of error is overruled.
Judgment affirmed.
SLABY, P.J., BAIRD, J. CONCUR